May I please the court? Oh, shall I begin? Yes. My name is Maris Liss. I have stepped in to do the oral argument for Mr. Reyes Carbajal. I didn't brief the case. By any chance, did you get the two 28-J letters that I filed? We have all the 28-J letters. Okay, great. There were some things that came up when I was studying to prepare that I wanted to make sure were covered. Also, I just want to mention that in my second letter, I brought attention to the administrative record 331, which was the retainer agreement, and that on the left-hand margin. I tried to read it as best I can, but two things I want to point out. The BIA is underlined in terms of the fact that Reyes Carbajal was making an agreement for BIA activity. It says BIA appeal pending new I-130 something illegible father. It was based on the father. And then the priority date that he had, which is when he filed. And then I said it said priority because I knew that was the priority date, but I think it actually says pending, meaning that the attorney and the client were waiting for two things. They were waiting for an I-130 petition to be approved. They had an old priority date that they were recapturing, I suppose. So they were waiting for the new one to be approved, which was something that the attorney was supposed to give Reyes notice about. And also, they were waiting for the priority date to be current, which means that people get a certain number of green cards are allotted for different categories, hero's father and son. But there are so many applications that in 2005, they were working on people that had filed in 2001, and they knew based on where the numbers were that the priority date was going to become current soon and he would be able to apply for the green card. So Reyes was waiting to hear when the I-130 would be approved and when the priority date would be current. I just wanted to mention that. For my oral argument, I have two things prepared. One is to discuss whether there is state action involved that would be a basis for finding a Fifth Amendment right to effective assistance, and that addresses one of the premises of a fine way, and I felt like it might not have been fully covered in the briefing, so I wanted to bring it to your attention. I have a two-part answer for why there's state action, and then I also want to rebut in the BIA's decision. There's a paragraph on administrative record four that's about five lines, five sentences, and it says all the reasons why his ineffective assistance of counsel claim failed. I basically break it up into five points, and I'll rebut each one of why it didn't fail. If you don't have a preference, I'll do state action first. So in a fine way, this court, as you know, that was a vacated case, but for other grounds. But the court said that there was no Sixth Amendment due process right, no Fifth Amendment due process right. It was really a Fifth Amendment case, but they started out by saying, well, we all know there's no Sixth Amendment right, there's not criminal proceedings, and now we're going to tell you why there's no Fifth Amendment right. They said an alien's counsel cannot violate his client's Fifth Amendment rights unless he can be said to be engaging in a state action. So they said a private attorney is not doing state action, they're just doing private action, and that's why a fine way lost. I have my two-part answer. The first part is bringing to bear a Supreme Court case called Shelley v. Kramer, 344 U.S. 1. It's a landmark Supreme Court case holding that courts cannot enforce racial covenants on real estate. And the dictum in Shelley v. Kramer is that due process does not apply to private conduct, and that's something that a lot of people agree about. But reading further into it, the holding says that in Shelley they found that state action can be action that the court itself does. So the Shelley case is best known for the holding that the use of courts to enforce a racially discriminatory land covenant would qualify a state action. Similarly, in deportation, the state action is that the administrative court, the administrative appeals court, does the state action of deporting someone. And so the proper focus is on the court, just like in Shelley, as opposed to the private attorney. If the state action renders the proceeding fundamentally unfair, like deporting somebody without giving them effective assistance of counsel, then that would be a question of fact, and then due process would have been violated if it was found that there was ineffective assistance of counsel. Now, my second part of the answer looks at a different angle, which is about the whole private lawyer thing. Well, how could a private lawyer be engaged in state action? So I bring your attention to the fact that in criminal cases, the private status of retaining counsel does not vitiate the fact that it's considered state action and a person still has a Sixth Amendment due process right, even if their lawyer was not court appointed. Even if the defendant is paying for it himself, it's still considered enough state action. Now, there's actually a statute, 8 USC 1362, which says that an alien in deportation proceedings is allowed to have, has a right, not allowed, has a right to counsel at their own expense. So there is a right to counsel in both situations, in the criminal situation, and there's a right to counsel in the deportation situation. And I would argue that in both situations, it doesn't matter if it's a private attorney. And so I would just want to quote from that, from the case. Let's see. I think it's Strickland, but I have bad notes. An accused is entitled to be assisted by an attorney, whether retained or appointed. So it's the same thing for Fifth Amendment due process, that it doesn't matter if it's a private attorney. And so we don't have to worry about the thing that was worried about in a fine way, about, well, it's a private attorney, so it only goes to private action. Because even in the criminal context, you have a private attorney and state action. Okay. I think I said everything I want about that. I'll move on to the ineffective assistance claim, unless you have a question about that. Do you mind if I take a sip of water? No. Okay. You're doing fine. So in the administrative record at four, there's this paragraph that goes through all the reasons why there was no ineffective assistance found by the BIA. I divided it into five parts, and I apologize for looking at my notes a little bit more than I expected to. So the first part is that the BIA said, Let me ask you something. Why in all this that you're arguing, undermined by the fact that he reentered unlawfully in 2007? The reason is that but for ineffective assistance of counsel, he would not have left the country to begin with. He was harmed because his lawyer, his I-130 was approved June 1st, and then like a week later, his priority date became current. He didn't leave until July 7th. Now, if you look at the prior counsel's response to the grievance, which I think I quoted in my second letter, the counsel says, Oh, he never came back to my office after, I don't remember exactly. I'm just going to find the words. I'm not finding it fast. He said he didn't come back to my office, but CHAPA, the first attorney, didn't say, I called him. I sent him a letter. I told him he's got to come in because the I-130 was approved. He has to come in because after the priority date becomes current, as part of a motion to reopen, you have to actually fill out the application for the green card, which is called a 485. So even though he was given the privilege of voluntary departure, meaning he could leave at his own expense. That's in 2004, 2005. In 2004, 2005. Even though he had that privilege, he was not required to take that privilege. He was allowed to turn it down. There's a Supreme Court case, whose name is escaping me, that says that somebody could turn it down if some kind of circumstances change within the 90 days so that you could file a motion to reopen. Can I just bring you back to the reentry in 2007? So just assume, for the sake of argument, there is such a thing as an ineffective assistance claim. There was an ineffective assistance by CHAPA in 2005. I mean, there's still this question, right, about what happened in 2007 and what the relief for that 2005 violation would look like. Because as I understand the government, they're saying it doesn't matter. There's an independent bar to admissibility of this 2007 unlawful reentry. And you're saying as part of the relief for what happened in 2005, the BIA has to overlook that? Is that the idea? If the first lawyer had done things properly, then my client never would have left the country. And he would not have incurred this situation where he was out of the country and his priority date was current and stuff like that. And it's sort of like a forgiveness, an equitable tolling kind of thing. Like my client's problem was he was too darn diligent. The court said you have to leave by a certain date. And he listened. He wanted to make sure that he didn't miss the order that the court gave him. You know, ironically, the BIA is saying that he wasn't diligent because he waited so long to pursue his rights. But what happened here is worse than ineffective assistance at counsel. His lawyer abandoned him. And there are a couple of cases I mentioned in my second letter, Maple and Holland, which is like when a lawyer just simply abandons you. Maple is that case from Sullivan and Cromwell where a lawyer left the firm and then somebody missed their time for filing an appeal in Georgia. And they said that abandonment is an extraordinary circumstance. And the way I read it is it's worse than ineffective assistance at counsel because my client was completely abandoned. All these important things were taking place in his case in June, and his lawyer, who has a letter in the record, never notified him. All he said in his letter is, oh, he never came by my office again. Well, he had a duty as his lawyer, especially because in the retainer agreement, left margin, there's a note saying that the lawyer is waiting for the I-130 to be approved. This is in handwriting. And is also waiting for the priority date to be current. Well, that means he has a duty to let the client know. The client wouldn't know. And I just want to also mention that the notation on the left margin of the retainer agreement is in English, but everything else is in Spanish. And then there's a business in the BIA decision where it says that the immigration judge in 2004 suggested he could bring a motion to reopen and that Reyes was sitting in the courtroom. And also that Reyes says in his affidavit that in 2005 the immigration judge said I could bring a motion to reopen. But that doesn't mean that he knew what the judge was saying. It says in the record at 110 to 111 that the immigration judge asked the most recent prior attorney, Ms. Minicon, was there a Spanish language translator in the room in 2005? And Minicon said she listened to the cassette of that hearing. That transcript is not in your record. But she said she listened to the transcript and she didn't hear any Spanish translation taking place. Why does that even matter? I would think that your argument is who cares what the IJ said in open court? The point is the lawyer after that told him don't worry about it. You don't have to file a motion to reopen. You're good. Just go to Honduras. And I would think that's your argument, that the lawyer negated anything that the judge might have said or any notice that might otherwise have been given. I like that, too. I believe in alternate arguments. I'm doing the best I can. I just stepped in last week. I'm doing the best I can. I think we understand your argument. Do you have more? Let me just look real fast at my notes for one minute in case I have something major I wanted to say. Just that normally there's a presumption of regularity in immigration proceedings, but here that's rebutted by the fact that we don't know if there was a Spanish translator. The BIA specifically said and the immigration judge specifically said that Reyes was in the courtroom when the judge suggested he could do a motion to reopen. And both of them are sort of saying that he had noticed that he could do a motion to reopen and he even said it in his affidavit. But we don't know if there was a translator. Okay. Thank you. Thank you very much. Thank you. May it please the Court, Your Honors, Tim Randence on behalf of the United States Attorney General and Loretta E. Lynch. This immigration case, Petitioner, a native and citizen of Honduras, seeks review of the decision of the Board of Immigration Appeals which had adopted and affirmed an immigration judge's decision. Finding Petitioner failed to meet his burden of proof to establish eligibility for adjustment of status where there are two inadmissibility bars at play. The first inadmissibility bar, 1182A9BII, which I'll just refer to as A9B, states that when there's an unlawful presence of more than one year and there's a departure or removal, that noncitizen is inadmissible to the United States. The second inadmissibility bar. No, that's what you're talking about, the 2007 unlawful reentry. That would be the next inadmissibility bar. All right. 1182A9C. It states that where there has been a prior immigration violation, an aggregate period of one year of unlawful presence, and then there's been an attempt or actual legal reentry in the United States, that noncitizen is inadmissible under that subsection. Now, Petitioner claimed ineffective assistance of counsel excused both of these inadmissibility bars. I think we can quite quickly dispense with one of these, A9C. That required that legal entry, that second immigration violation. That was when Petitioner, after he voluntarily departed to Honduras in 2005, he waited two years and then he took it upon himself to illegally reenter a second time to the United States in 2007. Nothing counsel did made him illegally reenter the United States in 2007. You're saying that renders the ineffective counsel argument moot or underlines it or what? It renders it moot because counsel had nothing to do with that decision and only to apply it. But if we think there was, assuming again sort of hypothetically, if there was ineffective assistance that rendered the proceeding fundamentally unfair, and that's something we can acknowledge, what about the argument that we have to figure out what is the relief for that? And there's some Ninth Circuit precedent, right, that you put the person back in the position he would have been in, but for the ineffective assistance, which is he has this visa and he should be able to seek adjustment of status, just as he could have in 2005. I think you could make an argument for non-proton relief for 2005 based on what he alleges was ineffective assistance regarding that first inadmissibility bar. That's the A9B ground, which was because of his departure. But after that, there was a clear break when he goes to Honduras. He was there for two years? For two years. No counsel ever advised him to illegally re-enter the United States. I understand that. It's not caused by the ineffective assistance in the same way, but unless I'm misreading these Ninth Circuit pieces, it sounds like there was one very much like this one. I'm going to get the name wrong. But the idea is, right, the ineffective assistance didn't cause the illegal re-entry. That's not the argument. The argument is that in order to remedy, there's no way to give a remedy for that ineffective assistance other than to put the person back in the position he would have been in, which is he would have been sitting there reopening a proceeding so that the visa approval could be taken into consideration. You just think those cases are wrongly decided. I think that is wrongly decided, but in particular the facts of this case, it's just too attenuated. It would be like some sort of proximate cause argument where you have to take one and it follows through the other, but there's this big break there where he takes it upon himself to legally re-enter. So whatever his counsel did, he did not have to re-enter the United States illegally. Do you understand the BIA or the IJ to have sort of relied on this argument, basically, look, we'll assume ineffective assistance of counsel. It just doesn't matter. That's not something that can be remedied in the way the petitioner is asking. That's what the IJ is stating, and the board adopted it and affirmed the immigration judge, and the arguments got sort of confusing as it went through proceedings. I believe before the immigration judge, petitioner was really arguing IAC for just that first round, the 89B. But then when you see the proceedings before the board, it kind of all gets wrapped up in their brief because I think they realized at that point they have to tie it all together. So you see this kind of vague argument that ineffective assistance of counsel also caused this inadmissibility bar due to his second unlawful re-entry in the United States. And I think the immigration judge correctly put that to bed early on, saying counsel never advised you to re-enter the United States. In fact, at that time, look at the record, his prior counsel, Chapa, was pursuing legal means for him to re-enter the United States. He filed an application for action on an approved visa, better known as consular processing. And he had that pending at that time, and then he had a waiver application for that first admissibility bar, also pending. That was pending when he came back illegally? Yes. So the guy was still representing? They came to another agreement in January 2006 for consular processing. You all talk about all these agreements the lawyer had with this fellow, as if that makes them kind of different. I thought the lawyers show up, represent somebody, they're in it. Well, let's look at the contract. They're in it, period. They can't come in and say, well, I'm not here anymore because he missed a payment or something. I thought if the lawyers showed up, the lawyers represent somebody. They have to do their best they can. Well, the important thing to notice here is... Isn't that the law that governs lawyers? If they appear, aren't they in the case? Exactly, and he did file an appearance for the immigration... Well, what difference does it make whether the guy made a monthly payment or not? Well, the difference here is whatever ineffective assistance happened occurred outside of removal proceedings. That all may be exactly right, but I don't understand why you all keep arguing that he wasn't paying his lawyer and that the agreement wasn't being complied with or whatever. Why do you have to get into that? We argue that he stopped paying his lawyer as of the immigration judge's final order to show some corroboration for this objective belief that there was no further arrangement with the lawyer for this motion to reopen. The lawyer appeared in the case. He did appear. The lawyer is the lawyer. Yes. You don't get in cases and then abandon your client. Well, he appeared before the immigration judge for removal proceedings. Doesn't there have to be something in the agreement, like I will not provide you incorrect legal advice? Unless that's in the agreement, like you're fine? He never provided incorrect legal advice. No, but does that have to be... you didn't listen to the question. Does that have to be in the agreement? Of course not. I mean, of course not. Of course not. Isn't that the crux of his claim? I understand that you're contesting it, but the crux of the claim here is my lawyer gave me incorrect advice. He told me don't worry about filing to reopen. Go to Honduras. We'll do it there. So he precluded me from being able to reopen when I got my visa approved. Also, by the way, he didn't tell me my visa had been approved. I can explain why that was not erroneous advice. So in March 15, 2005, he was ordered removal. He was granted voluntary departure for 120 days, ending on July 18, 2005. At that point, he had neither an approved visa, much less an immediately available visa. And that affidavit where he's taking that language from, the petitioner states, I was talking to my lawyer, Chapa, and he told me that at this point the best thing to do is consular processing through Honduras. He never states when this conversation took place, but presumably it took place at that final hearing. But nevertheless, you think it's not connected to the removal proceeding. The conversation took place presumably right at that hearing, but it's not connected to it? It's connected in the sense that that was the right advice at the time. Because there was no approved visa yet, there was no immediately available visa, there was no way to adjust status at all at that point. I'm sorry, I was asking a different question. I thought you had argued earlier that any ineffective assistance that took place here was not connected to a removal proceeding. That's part of it, too, because he's claiming there's a duty to file a motion to reopen after removal proceedings. So any ineffective assistance he's claiming is after removal proceedings. Even though it took place at the removal proceeding. No, what I'm trying to explain is that that was not ineffective assistance at that hearing. Because that was the proper advice at the time. There was a final order of removal. He had to comply with that voluntary departure order. If he did not, then he would be ineligible for adjustment of status in the first place. And so that was the proper advice, that we have to go through consular processing at this point. You should comply with your voluntary departure order, or else you will be ineligible for adjustment of status. You don't have an approved visa right now. You don't have an immediately available visa. So what we have to do at this point is abide by the immigration judge's ruling. Why? But the IJ has just said, if your visa is approved before you actually depart the country, you should come back and move to reopen these proceedings. And the lawyer is saying, no, don't do that. The lawyer is not saying, don't do that. He's saying that option is not available yet. There's no approved visa. There's no immediately available visa. And that's what the immigration judge is stating as well. Once those things happen, perhaps there's a motion to reopen that you can do. But at the time that conversation took place, none of those options were on the table yet. The only option on the table was compliance with that voluntary departure order, so as not to render him ineligible for adjustment of status. How long, what was the period of time that you had to, from the hearing to the time when you had to voluntarily depart? This is where the timeline becomes very important in this case. That's what I'm asking you about. Yes. So on March 15, 2005, he was ordered removed. He was granted voluntary departure in this period of 120 days, ending on July 18, 2005. Then his visa was approved two months later, after the immigration judge's order, on March 23, 2005. Then it became immediately available. That's on June 9, 2005. That is when he was potentially eligible for adjustment of status, on June 9. And then a motion to reopen would have been due by June 13, four days later, because there's only 90 days in which to file a motion to reopen. So you see in CHOPPA's response... But none was filed. None was filed. And you'll see CHOPPA... And that's the point here, isn't it? That's what they're claiming was ineffective assistance. And you admitted it was. No, I didn't. But you did. You said it doesn't make any difference. Excuse me? I thought you admitted it was ineffective counsel, but it doesn't make any difference. No, no, no. The impression was given that there was not ineffective assistance in this case. He gave proper advice at the final hearing, and then after that there was no contact with Petitioner. And what they're arguing about is whether or not there was any agreement after removal proceedings to file this petition. Well, he had withdrawn from representation of the client. Why didn't he have to make the motion to reopen? He's not withdrawing his contract. He filed an appearance before the immigration judge. He would have to file another appearance to file a motion to reopen. Okay. Let's just assume for purposes of our argument right now that there was ineffective assistance then. Do you lose? Does the government lose? No. Even if you assume that, we still have the other inadmissibility bar, which is solely caused by him, his actions illegally reentering the United States in 2007. In 2007? You're saying the 2007 illegal reentry cleans it up. If there was any ineffective assistance of counsel, we still have that bar. Okay. Now, if that is so, how do you distinguish the Ninth Circuit case? Was this cited in Petitioner's brief? Yes. It wasn't cited in your brief, but it was cited in Petitioner's brief. Well, I would distinguish it again on some kind of proximate causation, but there's a clear break in Honduras. He could have remained in Honduras and abided by the law. I think that's what happened in Salazar Gonzales. It was the same thing. There was the unlawful reentry bar, and the court said no, because there's no other way to remedy the ineffective assistance here except to put the person back in the same position they would have been in. Well, I think they're incorrect. There shouldn't have been a remedy in that case. You know, it's a principle case upon which they rely, and you're representing the United States here, and the United States is in the Ninth Circuit just like they're here. So it seems to me you should have a response other than the Ninth Circuit is wrong. Well, I'm sure we argued that in front of the Ninth Circuit as well. I beg your pardon? I'm sure we argued that in front of the Ninth Circuit as well. In fact, it is actually different than the case at hand, but you don't care about that because you just want to argue it's wrong. But if the government thought it was wrong, then the government should petition for cert. Well, in this case, in these circumstances, there is a clear break in Honduras. And can I explain that he could have waited the 10 years too, and he was going through legal processes with consular processing. What he chose to do was his own illegal conduct, which in his affidavit he admits he knew was wrong. He states not that his attorney made him re-enter the United States. He said he wanted to be reunited with his father, and he knew that decision was wrong, and it was his own decision. That has nothing to do with counsel at that point, no one telling him to break the law at that point. But I'd also like to briefly get into this idea... I thought that was your argument here, that the 2007 thing cleans it all up for the government. That the lawyer messed it all up, but then he helped the government out by unlawfully coming back in 2007. Government's brief starts with this in admissibility bar in 2007, which states this has nothing to do with ineffective assistance counsel, no matter how you look at it. And then it goes into why there was never an effective assistance counsel in the first place, because based on the facts of the record, there was never any agreement to this motion to reopen. And also, let's talk about, for one minute briefly, about... That's where you get back into what you're saying, that there was a limited agreement of representation. He filed a notice of appearance representing this fellow. I've never... I've been involved in a lot of cases myself, and ineffective assistance cases up here. Lawyers are in. They're in. They can't come in and say, well, I didn't get paid enough money. They have to work that out before they make their appearance. Well, with a very limited time remaining, I'd like to, with the Court's permission, address this idea that there's no prejudice. It's highly speculative what would have happened in this case in the first place. Because assuming that Motion to Reopen was prepared to file within those four days, as Chaffer's response points out, he would have had to come up with over $2,000 in fees for the 245i application, the Adjustment of Status application, and the Motion to Reopen fee. You want us to... And then... No, go ahead. After that, he had to have that motion granted before his voluntary departure was up three weeks later. Because at the time, this Court had no law stating that voluntary departure is told by the filing of Motion to Reopen. In fact, this Court found the opposite in 2006. So there could have been no tolling of that voluntary departure period. So in order to have shown there's prejudice in this case, you'd have to show there's more than just merely speculative that this Motion to Reopen would have been filed in those four days and also would have been granted within the three weeks before his voluntary departure period was up. But you don't really want us to rely on the fact that it would have been hard for him to raise the money. No, that's what Chapa's response is stating. Because Chapa is also, his prior attorney is pointing out, that he stopped paying it in the first place. This particular client had financial issues to begin with. And that's why he's pointing out that it would have been very speculative if they could have come up with this money in those four days and then obtained reopening in the next three weeks. I see my time is up. Thank you very much. Do you have any rebuttal? Yes. I want to answer Judge King's question. You said, why do people keep talking about the agreement? What does the agreement have to do with anything? The reason that I think that there's a focus on that is because the BIA decision, as part of the denial of the ineffective assistance claim, said the respondent, meaning Reyes Carpajal, did not adequately detail the agreement he entered with the prior counsel with respect to the actions to be taken following his 2005 hearing. So the BIA made it an issue that in Lozada, there are different things you have to do. You have to file agreements. You have to show what your agreement was. So a lot of times the BIA looks at this step of Lozada about showing the agreement, and they say, oh, well, it wasn't part of the agreement that was supposed to happen. So that's why people are asking about the agreement, and that's why I want you to know that in the margin there was an amendment saying that BIA was part of the agreement. And so, therefore, on that claim, the BIA was wrong. Can I ask you a question? Do you make any claim that the law changed between the time when your client voluntarily departed and when he came back? The law changed. I am not prepared to answer that question. Well, this is your chance. No, I know. I just don't know the answer. The law changed. It's relevant to him, not all of the laws of the United States. It's relevant to this dispute. Does his legal position change? His factual position changed. But does legal position change? Was there any amendment in the immigration laws that assisted him or would have assisted him before but didn't assist him now? Are you meaning to say that there was a time when, if you didn't take voluntary departure, then it was a mark against you? And that might be a change. And then the Supreme Court, was it around that time that the Supreme Court said that you can actually give back voluntary departure? I'm really looking at the time when he voluntarily departed. Was there something that he could have gotten then that he couldn't get because he came back to the United States legally? Factually, we understand your whole argument. Can you just ask me one more time so I can list it again? Okay. Let me try one more time. Okay. What I wanted to know was, you know, sometimes the laws change. And you say, well, I had a right under this past law. But the Senate has taken away that right. And so I no longer have it. Did that happen between the time that he voluntarily departed and when he came back? Did he have some right at the time he voluntarily departed that he would have if he had then, but he didn't have when he came back? I just don't know the answer to that question. I'm sorry. I apologize. Let me just look. I have a couple of other things. I just want to say something towards the government's arguments that he only had three days to file the motion to reopen, and he had to come up with money. I represent many, many – I don't think you have to worry about that. Okay, okay. Okay, then I think I'm done if you don't have any more questions. Thank you very much. Thank you very much. We will come down and greet the lawyers and then go directly to our next case.
judges: Diana Gribbon Motz, Robert B. King, Pamela A. Harris